18,34,APPEAL,CLOSED,REFER

# U.S. District Court
## CENTRAL DISTRICT OF ILLINOIS (Springfield)
## CIVIL DOCKET FOR CASE #: 3:24−cv−03292−CRL−DJQ

| | |
|---|---|
| Drew v. Collins et al | Date Filed: 10/21/2024 |
| Assigned to: Judge Colleen R. Lawless | Date Terminated: 09/30/2025 |
| Referred to: Magistrate Judge Douglas J Quivey | Jury Demand: Plaintiff |
| Demand: $50,000 | Nature of Suit: 440 Civil Rights: Other |
| Cause: 42:1983 Civil Rights Act | Jurisdiction: Federal Question |

**Plaintiff**

| | | |
|---|---|---|
| **Richard Drew**<br>*as Independent Administrator of the Estate of H.D., a minor, now deceased* | represented by | **Aaron Wesley Rapier**<br>RAPIER LAW FIRM<br>Suite 200<br>1770 Park Street<br>Naperville, IL 60563<br>630−853−9224<br>Fax: 815−327−3449<br>Email: arapier@rapierlawfirm.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br><br>**James Ormond**<br>HART MCLAUGHLIN & ELDRIDGE<br>Suite 1400<br>1 South Dearborn<br>Chicago, IL 60603<br>312−261−8417<br>Email: jormond@hmelegal.com<br>*ATTORNEY TO BE NOTICED*<br><br>**Julie Ann Murphy**<br>HART MCLAUGHLIN & ELDRIDGE<br>Suite 1400<br>1 South Dearborn<br>Chicago, IL 60603<br>312−971−9236<br>Fax: 312−971−9243<br>Email: jmurphy@hmelegal.com<br>*ATTORNEY TO BE NOTICED*<br><br>**Sofia Villeda**<br>HART MCLAUGHLIN & ELDRIDGE, LLC<br>Suite 1400<br>1 S Dearborn<br>Chicago, IL 60603<br>312−761−2362<br>Email: svilleda@hmelegal.com |

1

<em>ATTORNEY TO BE NOTICED</em>

V.

**Defendant**

Nancy Collins      represented by **Barbara Lynn Greenspan**
ILLINOIS ATTORNEY GENERAL
12th Floor
100 W Randolph St
Chicago, IL 60601
312–814–7087
Fax: 312–814–6885
Email: barbara.greenspan@illinois.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Bernard James Slater , Jr**
OFFICE OF THE ILLINOIS ATTORNEY
GENERAL
500 South Second Street
Springfield, IL 62701
217–557–7081
Email: bernard.slater@ilag.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ginger Devaney**
ILLINOIS ATTORNEY GENERAL'S
OFFICE
115 South LaSalle Street
Chicago, IL 60603
312–898–8959
Email: ginger.devaney@illinois.gov
*TERMINATED: 01/09/2026*
*ATTORNEY TO BE NOTICED*

**Defendant**

Lindia Holmes      represented by **Barbara Lynn Greenspan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Bernard James Slater , Jr**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ginger Devaney**
(See above for address)
*TERMINATED: 01/09/2026*
*ATTORNEY TO BE NOTICED*

| | | |
|---|---|---|
| **William Hedger** | represented by | **Barbara Lynn Greenspan** |
| | | (See above for address) |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Bernard James Slater , Jr** |
| | | (See above for address) |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Ginger Devaney** |
| | | (See above for address) |
| | | *TERMINATED: 01/09/2026* |
| | | *ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **Jessica Hendrick** | represented by | **Barbara Lynn Greenspan** |
| | | (See above for address) |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Bernard James Slater , Jr** |
| | | (See above for address) |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Ginger Devaney** |
| | | (See above for address) |
| | | *TERMINATED: 01/09/2026* |
| | | *ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **Kemmerer Village Inc.** | represented by | **Edward Cain** |
| *d/b/a Kemmerer Village Community* | | Suite #2260 |
| *Services* | | 230 W. Monroe |
| | | Chicago, IL 60606 |
| | | 720–270–4449 |
| | | Email: enc@lipelyons.com |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Jordan M. Tank** |
| | | WIEDNER & MCAULIFFE LTD |
| | | Suite 550 |
| | | 8000 Maryland Ave |
| | | St. Louis, MO 63105 |
| | | 312–855–1105 |
| | | Fax: 312–855–1792 |
| | | Email: jmt@lipelyons.com |
| | | *ATTORNEY TO BE NOTICED* |

**Madeleine King**
LIPE LYONS MURPHY NAHRSTADT
& PONTIKIS, LTD.
Suite 2260
230 W. Monroe St.
Chicago, IL 60606
312–448–6237
Email: mk@lipelyons.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Kristie Hebenstreit**    represented by    **Edward Cain**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jordan M. Tank**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Madeleine King**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Chris Brizindine**    represented by    **Edward Cain**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jordan M. Tank**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Madeleine King**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Christopher Gunn**

**Defendant**

**Ashley Bottoms**
*a/k/a Ashley Orr, a/k/a Ashely Gunn*

**Cross Claimant**

**Kemmerer Village Inc.**    represented by    **Edward Cain**
*d/b/a Kemmerer Village Community*    (See above for address)
*Services*    *ATTORNEY TO BE NOTICED*

**Jordan M. Tank**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Madeleine King**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Claimant**

**Kristie Hebenstreit**                    represented by   **Edward Cain**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jordan M. Tank**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Madeleine King**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cross Claimant**

**Chris Brizindine**                    represented by   **Edward Cain**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jordan M. Tank**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Madeleine King**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Cross Defendant**

**Ashley Bottoms**
*a/k/a Ashley Orr, a/k/a Ashely Gunn*

**Cross Defendant**

**Nancy Collins**                    represented by   **Bernard James Slater , Jr**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cross Defendant**

**Christopher Gunn**                    represented by   **Rick Verticchio**
VERTICCHIO & VERTICCHIO
238 East Side Square

PO Box 474
Carlinville, IL 62626
217–839–4411
Fax: 217–839–3444
Email: gillespie@verticchiolaw.com
*ATTORNEY TO BE NOTICED*

**Cross Defendant**

**William Hedger**                                    represented by **Bernard James Slater , Jr**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

**Cross Defendant**

**Jessica Hendrick**                                  represented by **Bernard James Slater , Jr**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

**Cross Defendant**

**Lindia Holmes**                                     represented by **Bernard James Slater , Jr**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

Email All Attorneys
Email All Attorneys and Additional Recipients

| Date Filed | # | Docket Text |
|---|---|---|
| 10/21/2024 | 1 | COMPLAINT against Ashley Bottoms, Chris Brizindine, Nancy Collins, Christopher Gunn, Kristie Hebenstreit, William Hedger, Jessica Hendrick, Lindia Holmes, Kemmerer Village, Inc. d/b/a Kemmerer Village Community Services ( Filing fee $ 405 receipt number AILCDC–4587474.), filed by Richard Drew. (Attachments: # 1 Exhibit Exhibit A, # 2 Civil Cover Sheet)(Murphy, Julie) (Main Document 1 replaced on 10/22/2024) (JS). (Attachment 1 replaced on 10/22/2024) (JS). (Attachment 2 replaced on 10/22/2024) (JS). (Entered: 10/21/2024) |
| 10/23/2024 | 2 | NOTICE of Appearance of Attorney by Julie Ann Murphy on behalf of All Plaintiffs (Murphy, Julie) (Entered: 10/23/2024) |
| 10/24/2024 | 3 | NOTICE of Appearance of Attorney by James Ormond on behalf of All Plaintiffs (Ormond, James) (Entered: 10/24/2024) |
| 10/24/2024 |   | TEXT ORDER entered by Judge Colleen R. Lawless on 10/24/2024: The Clerk is Directed to seal the Appearance of Counsel 2 , which included the full name of the minor Plaintiff. (JPL) (Entered: 10/24/2024) |
| 10/24/2024 | 4 | NOTICE of Appearance of Attorney by Aaron Wesley Rapier on behalf of All Plaintiffs (Rapier, Aaron) (Entered: 10/24/2024) |
| 10/30/2024 | 5 | NOTICE *of Summons to be issued to Ashley Bottoms* (Murphy, Julie) (Entered: 10/30/2024) |

| | | |
|---|---|---|
| 10/30/2024 | 6 | NOTICE *of Summons to be issued to Lindia Holmes* (Murphy, Julie) (Entered: 10/30/2024) |
| 10/30/2024 | 7 | NOTICE *of Summons to be issued to Kemmerer Village* (Murphy, Julie) (Entered: 10/30/2024) |
| 10/30/2024 | 8 | NOTICE *of Summons to be issued to Jessica Hendrick* (Murphy, Julie) (Entered: 10/30/2024) |
| 10/30/2024 | 9 | NOTICE *of Summons to be issued to Nancy Collins* (Murphy, Julie) (Entered: 10/30/2024) |
| 10/31/2024 | 10 | Summons Issued as to Ashley Bottoms, Chris Brizindine, Nancy Collins, Christopher Gunn, Kristie Hebenstreit, William Hedger, Jessica Hendrick, Lindia Holmes, Kemmerer Village Inc. Original summons returned to counsel to effectuate service. (JPL) (Entered: 10/31/2024) |
| 11/22/2024 | 11 | NOTICE of Appearance of Attorney by Bernard James Slater, Jr on behalf of Nancy Collins, Lindia Holmes, William Hedger (Slater, Bernard) (Entered: 11/22/2024) |
| 11/22/2024 | 12 | MOTION for Extension of Time to File Answer by Defendants Nancy Collins, Lindia Holmes, William Hedger. Responses due by 12/6/2024 (Slater, Bernard) (Entered: 11/22/2024) |
| 11/25/2024 | | TEXT ORDER Entered by Magistrate Judge Karen L. McNaught on 11/25/2024. The Motion for Extension of Time 12 filed by defendants to answer or otherwise respond to the complaint is GRANTED for the reasons stated therein. Defendants shall answer or otherwise plead to the complaint by 1/9/2024. (AEJ) (Entered: 11/25/2024) |
| 11/25/2024 | 13 | NOTICE of Appearance of Attorney by Jordan Matthew Tank on behalf of Kemmerer Village Inc. (Tank, Jordan) (Entered: 11/25/2024) |
| 11/25/2024 | 14 | Federal Rule of Civil Procedure 7.1 Disclosure Statement by Kemmerer Village Inc.. (Tank, Jordan) (Entered: 11/25/2024) |
| 11/25/2024 | 15 | MOTION to Dismiss *by Defendants Hebenstreit, Brizendine, and* by Defendant Kemmerer Village Inc.. Responses due by 12/9/2024 (Tank, Jordan) (Entered: 11/25/2024) |
| 11/25/2024 | 16 | BRIEF *in Support* re 15 MOTION to Dismiss *by Defendants Hebenstreit, Brizendine, and* by Kemmerer Village Inc., Kristie Hebenstreit, Chris Brizindine. (Attachments: # 1 Exhibit Exhibit A)(Tank, Jordan) (Entered: 11/25/2024) |
| 12/09/2024 | 17 | RESPONSE to Motion re 15 MOTION to Dismiss *by Defendants Hebenstreit, Brizendine, and Kemmerer Village, Inc.,* filed by Plaintiff Richard Drew. (Murphy, Julie) (Entered: 12/09/2024) |
| 12/17/2024 | 18 | MOTION for Extension of Time by Defendant Ashley Bottoms. Responses due by 12/31/2024 (JS) Modified on 12/18/2024 to correct the entry to reflect the motion was filed by defendant Ashley Bottoms. (JS). (Entered: 12/17/2024) |
| 12/18/2024 | | TEXT ORDER entered by US Magistrate Judge Karen McNaught on 12/18/2024: The Motion for Extension of Time 18 filed by defendant Ashley Bottoms to answer or otherwise respond to the complaint is GRANTED for the reasons stated therein. Defendant Bottoms, as well as defendants Nancy Collins, Lindia Holmes, and William Hedgers shall answer or otherwise plead to the complaint by 1/9/2025. (JPL) (Entered: 12/18/2024) |

| | | |
|---|---|---|
| 01/02/2025 | 19 | Alias Summons Issued as to Jessica Hendrick, Christopher Gunn. Returned to counsel for issuance. (Attachments: # 1 CGunn Summons)(AEJ) (Entered: 01/02/2025) |
| 01/03/2025 | 20 | AFFIDAVIT of Service for Summons served on William Hedger on 11/8/2024, filed by Richard Drew. (Murphy, Julie) (Entered: 01/03/2025) |
| 01/03/2025 | 21 | AFFIDAVIT of Service for Summons served on Lindia Holmes on 11/4/2024, filed by Richard Drew. (Murphy, Julie) (Entered: 01/03/2025) |
| 01/03/2025 | 22 | AFFIDAVIT of Service for Summons served on Ashley Bottoms on 11/26/2024, filed by Richard Drew. (Murphy, Julie) (Entered: 01/03/2025) |
| 01/03/2025 | 23 | AFFIDAVIT of Service for Summons served on Nancy Collins on 11/11/2024, filed by Richard Drew. (Murphy, Julie) (Entered: 01/03/2025) |
| 01/03/2025 | 24 | AFFIDAVIT of Service for Summons served on Chris Brizindine on 11/10/2024, filed by Richard Drew. (Murphy, Julie) (Entered: 01/03/2025) |
| 01/03/2025 | 25 | AFFIDAVIT of Service for Summons served on Kemmerer Village, Inc. on 11/6/2024, filed by Richard Drew. (Murphy, Julie) (Entered: 01/03/2025) |
| 01/03/2025 | 26 | AFFIDAVIT of Service for Summons served on Kristie Herbenstreit on 11/6/2024, filed by Richard Drew. (Murphy, Julie) (Entered: 01/03/2025) |
| 01/06/2025 | 27 | AFFIDAVIT of Service for Summons served on Jessica Hendricks (wrong person) on 11/04/2024, filed by Richard Drew. (Murphy, Julie) (Entered: 01/06/2025) |
| 01/06/2025 | 28 | Summons Returned Unexecuted by Richard Drew as to Christopher Gunn. (Murphy, Julie) (Entered: 01/06/2025) |
| 01/06/2025 | | TEXT ORDER entered by Chief Judge Sara Darrow on 1/6/2025. Due to Judge Karen McNaught's retirement, this case and the corresponding hearings are referred to Judge Eric I. Long for further proceedings. (Entered: 01/06/2025) |
| 01/07/2025 | 29 | Second MOTION for Extension of Time to File Answer *Agreed* by Defendants Nancy Collins, Lindia Holmes, William Hedger. Responses due by 1/21/2025 (Slater, Bernard) (Entered: 01/07/2025) |
| 01/08/2025 | | TEXT ORDER Entered by Judge Colleen R. Lawless on 1/8/2025. Before the Court is Defendants' Second Agreed Motion for Extension of Time 29 to file responsive pleadings, to which Plaintiff does not object. For the reasons therein, the Second Agreed Motion for Extension of Time 29 is GRANTED. Defendants shall file responsive pleadings by 2/13/2025.(AEJ) (Entered: 01/08/2025) |
| 01/13/2025 | 30 | STRICKEN PURSUANT TO TEXT ORDER ENTERED 1/14/2025. NOTICE of Appearance of Attorney by Madeleine King on behalf of Kemmerer Village Inc., Kristie Hebenstreit, Chris Brizindine (King, Madeleine) Modified on 1/14/2025 (JS). (Entered: 01/13/2025) |
| 01/13/2025 | 31 | NOTICE of Appearance of Attorney by Madeleine King on behalf of Kemmerer Village Inc., Kristie Hebenstreit, Chris Brizindine (King, Madeleine) (Entered: 01/13/2025) |
| 01/13/2025 | 32 | NOTICE of Appearance of Attorney by Edward Cain on behalf of Kemmerer Village Inc., Kristie Hebenstreit, Chris Brizindine (Cain, Edward) (Entered: 01/13/2025) |
| 01/14/2025 | 33 | |

| | | |
|---|---|---|
| | | ORDER entered by Magistrate Judge Eric I. Long on 1/14/2025. This matter is scheduled for a Rule 16 Scheduling Conference by personal appearance before U.S. Magistrate Judge Eric I. Long on February 19, 2025, at 9:45 a.m., Courtroom B, U.S. Courthouse, 201 South Vine Street, Urbana, Illinois. If an agreed discovery plan pursuant to Fed. R. Civ. P. 26(f)(3) is filed seven days before the hearing, the Court will adopt the schedule and vacate the Rule 16 Scheduling Conference. *See full written Order.*(JS) (Entered: 01/14/2025) |
| 01/14/2025 | 34 | ORDER entered by Magistrate Judge Eric I. Long on 1/14/2025. This matter is scheduled for a Rule 16 Scheduling Conference by personal appearance before U.S. Magistrate Judge Eric I. Long on February 19, 2025, at 9:45 a.m., Courtroom B, U.S. Courthouse, 201 South Vine Street, Urbana, Illinois. If an agreed discovery plan pursuant to Fed. R. Civ. P. 26(f)(3) is filed seven days before the hearing, the Court will adopt the schedule and vacate the Rule 16 Scheduling Conference. *See full written Order.*(JS) (Entered: 01/14/2025) |
| 01/14/2025 | | TEXT ORDER entered by Judge Colleen R. Lawless on 1/14/2025: The Clerk is directed to strike Document 30 , which is a Notice of Appearance of Counsel signed by an attorney different from the filing attorney, in violation of Local Rule 11.4(A)(2). It appears that both counsel have now filed proper Appearances [ 31 , 32 ]. (JS) (Entered: 01/14/2025) |
| 01/17/2025 | 35 | NOTICE of Appearance of Attorney by Sofia Villeda on behalf of Richard Drew (Villeda, Sofia) (Entered: 01/17/2025) |
| 01/22/2025 | 36 | NOTICE of Appearance of Attorney by Bernard James Slater, Jr on behalf of Jessica Hendrick (Slater, Bernard) (Entered: 01/22/2025) |
| 01/29/2025 | 37 | MOTION for Extension of Time to File Answer re 1 Complaint,, by Defendant Jessica Hendrick. Responses due by 2/12/2025 (Slater, Bernard) (Entered: 01/29/2025) |
| 01/30/2025 | | TEXT ORDER Entered by Magistrate Judge Eric I. Long on 1/30/2025. Defendant's Agreed Motion for Extension of Time 37 is GRANTED for the reasons provided therein. Defendant Jessica Hendrick shall answer or otherwise plead by 2/13/2025. (AEJ) (Entered: 01/30/2025) |
| 02/10/2025 | 38 | REPORT of Rule 26(f) Planning Meeting by Richard Drew. (Murphy, Julie) (Entered: 02/10/2025) |
| 02/10/2025 | 39 | Alias Summons Issued as to Christopher Gunn. Returned to counsel for issuance. (AEJ) (Main Document 39 replaced on 2/10/2025) (AEJ). (Entered: 02/10/2025) |
| 02/13/2025 | 40 | MOTION to Dismiss by Defendants Nancy Collins, Lindia Holmes, William Hedger, Jessica Hendrick. Responses due by 2/27/2025 (Slater, Bernard) (Entered: 02/13/2025) |
| 02/13/2025 | 41 | MEMORANDUM in Support re 40 MOTION to Dismiss filed by Defendants Nancy Collins, Lindia Holmes, William Hedger, Jessica Hendrick. (Attachments: # 1 Exhibit A)(Slater, Bernard) (Entered: 02/13/2025) |
| 02/18/2025 | | TEXT ORDER entered by US Magistrate Judge Eric I. Long on 2/18/2025: The Rule 16 Scheduling Conference by personal appearance before U.S. Magistrate Judge Eric I. Long on February 19, 2025, at 9:45 a.m., Courtroom B, U.S. Courthouse, 201 South Vine Street, Urbana, Illinois, is hereby VACATED. The proposed discovery schedule as stipulated to by the parties in the Joint Initial Report of Rule 26(f) Planning Meeting 38 is adopted. The discovery deadlines are as follows: Initial Rule 26(a)(1) Disclosures are due 3/5/2025; the deadline to amend the pleadings is 7/8/2025; the deadline to add |

| | | |
|---|---|---|
| | | additional parties is 7/8/2025; all fact discovery must be completed by 11/5/2025; the Plaintiff's deadline to disclose expert report(s) is 1/5/2026; the deadline to depose Plaintiff's expert(s) is 2/9/2026; the Defendant's deadline to disclose expert report(s) is 3/23/2026; the deadline to depose Defendant's expert(s) is 5/4/2026; the deadline to complete all discovery is 5/4/2026; and the deadline to file dispositive motions is 6/1/2026.(JS) (Entered: 02/18/2025) |
| 02/27/2025 | 42 | RESPONSE to Motion re 40 MOTION to Dismiss filed by Plaintiff Richard Drew. (Murphy, Julie) (Entered: 02/27/2025) |
| 03/13/2025 | 43 | MOTION for Extension of Time to File Response/Reply by Defendants Nancy Collins, William Hedger, Lindia Holmes. Responses due by 3/27/2025 (Slater, Bernard) (Entered: 03/13/2025) |
| 03/14/2025 | | TEXT ORDER Entered by Magistrate Judge Eric I. Long on 3/14/2025. Defendants' Agreed Motion for Extension of Time to File Reply 43 is hereby GRANTED for the reasons provided therein. Defendants shall file any reply to Plaintiff's Response to Defendants' Motion to Dismiss 42 by 3/27/2025. (AEJ) (Entered: 03/14/2025) |
| 03/27/2025 | 44 | REPLY to Response to Motion re 40 MOTION to Dismiss filed by Defendants Nancy Collins, William Hedger, Jessica Hendrick, Lindia Holmes. (Attachments: # 1 Exhibit, # 2 Exhibit)(Slater, Bernard) (Entered: 03/27/2025) |
| 04/02/2025 | 45 | Alias Summons Issued as to Christopher Gunn. Returned to Counsel for issuance. (AEJ) (Entered: 04/02/2025) |
| 04/07/2025 | 46 | Summons Returned Unexecuted by Richard Drew as to Christopher Gunn. (Murphy, Julie) (Entered: 04/07/2025) |
| 05/07/2025 | 47 | MOTION to Stay re 40 MOTION to Dismiss by Defendants Nancy Collins, William Hedger, Jessica Hendrick, Lindia Holmes. Responses due by 5/21/2025 (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Slater, Bernard) (Entered: 05/07/2025) |
| 05/12/2025 | | TEXT ORDER entered by Chief Judge Sara Darrow on May 12, 2025. This case and the corresponding hearings are referred to Magistrate Judge Douglas J. Quivey for further proceedings. (Entered: 05/12/2025) |
| 05/13/2025 | 48 | Summons Returned Unexecuted by Richard Drew as to Christopher Gunn. (Murphy, Julie) (Entered: 05/13/2025) |
| 05/21/2025 | 49 | RESPONSE to Motion re 47 MOTION to Stay re 40 MOTION to Dismiss filed by Plaintiff Richard Drew. (Murphy, Julie) (Entered: 05/21/2025) |
| 05/23/2025 | | TEXT ORDER entered by US Magistrate Judge Doug Quivey on 05/23/2025: Before the Court is Defendants' Collins, Hedger, Hendrick, and Holmes Motion to Stay 47 . In the motion, the filing defendants ask that discovery be stayed until their pending motion to dismiss 40 is adjudicated. Plaintiff opposes the motion. As both sides recognize, Fed. R. Civ. 26 gives the court, broad discretion to tailor discovery narrowly and to dictate the sequence of discovery. See Fed. R. Civ. P. 26(c), (d); *Crawford−El v. Britton,* 523 U.S. 574, 599 (1998). The parties at issue dispute whether stays are favored or disfavored. *Compare Applegate v. St. Vincent Health, Inc.* , 2023 WL 2612408, at *1 (S.D. Ind. Mar. 23, 2023) (noting courts disfavor stays) with Bilal v. Wolf, No. 06 C 6978, 2007 U.S. Dist. LEXIS 41983, at *34 (N.D. Ill. June 6, 2007) (noting stays are not disfavored). Regardless, when all the circumstances and arguments are weighed, the Court exercises its discretion and DENIES the Motion to Stay 47 . The agreed scheduling order was entered just a few months ago on February |

| | | |
|---|---|---|
| | | 18, 2025, and just five days after these defendants filed the motion to dismiss on February 13, 2025. There are other parties in the case and given some of the factors a stay could be prolonged. The Court, however, will allow the filing defendants to renew their motion to stay after they engage in discovery for a reasonable time and can show that continuing to do so is unduly burdensome. (DW) (Entered: 05/23/2025) |
| 06/02/2025 | 50 | MOTION for Extension of Time to Serve Responses and Objections to Co–Defendants' Request to Admit, Request to Produce and Interrogatories by Defendants Nancy Collins, William Hedger, Jessica Hendrick, Lindia Holmes. Responses due by 6/16/2025 (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3)(Slater, Bernard) Modified on 6/3/2025 for title of document (ED). (Entered: 06/02/2025) |
| 06/03/2025 | | TEXT ORDER Entered by Magistrate Judge Douglas J Quivey on 6/3/2025. Before the Court are DCFS Defendant's Motion for Extension of Time to Serve Responses and Objections to Co–Defendants' Request to Admit, Request to Produce, and Interrogatories 50 . For the reasons contained in the motion, the motion is GRANTED. The DCFS Defendants are allowed up to and including June 18, 2025 to Serve their Responses and Objections to Co–Defendant Kemmerer's Request to Admit, Request to Produce, and answers to interrogatories. (AEJ) (Entered: 06/03/2025) |
| 06/18/2025 | 51 | MOTION for Extension of Time to Complete Discovery by Defendants Nancy Collins, William Hedger, Jessica Hendrick, Lindia Holmes. Responses due by 7/2/2025 (Slater, Bernard) (Entered: 06/18/2025) |
| 06/18/2025 | | TEXT ORDER entered by Magistrate Judge Douglas J. Quivey on 6/20/25: Before the Court are the DCFS Defendants' Second Motion for Extension of Time to Respond to Co–Defendants' Requests to Admit, Request to Produce, and Interrogatories 51 . For the reasons stated, the motion is GRANTED and DCFS Defendants are given up to and including July 2, 2025, to respond. (GL) (Entered: 06/20/2025) |
| 06/23/2025 | 52 | Second MOTION for Extension of Time to File Response/Reply *and Objections to Co–Defendants' Request to Admit, Request to Produce, and Interrogatories* by Defendants Nancy Collins, William Hedger, Jessica Hendrick, Lindia Holmes. Responses due by 7/7/2025 (Slater, Bernard) (Entered: 06/23/2025) |
| 06/23/2025 | | TEXT ORDER Entered by Magistrate Judge Douglas J Quivey on 6/23/2025. Before the Court is DCFS Defendants' Second Motion for Extension of Time (Doc. 52 ). In the Motion, the DCFS Defendants ask for up to an including July 2, 2025, to serve their Responses and objections to Co–Defendant Kemmerer Village's Request to Admit, Request to Produce, and Answers to Interrogatories. The Motion is DENIED as MOOT. On June 18, 2025, the Court granted the relief requested. (AEJ) (Entered: 06/23/2025) |
| 07/07/2025 | 53 | STRICKEN PURSUANT TO 7/8/25 TEXT ORDER: Joint MOTION for Extension of Time to Complete Discovery *to add additional parties and amend pleadings* by Defendants Chris Brizindine, Kristie Hebenstreit, Kemmerer Village Inc.. Responses due by 7/21/2025 (Attachments: # 1 Exhibit Ex. A, # 2 Exhibit Ex. B)(Tank, Jordan) Modified on 7/8/2025 (JA). (Entered: 07/07/2025) |
| 07/08/2025 | 54 | STRICKEN PURSUANT TO 7/8/25 TEXT ORDER: Exhibit re 53 Joint MOTION for Extension of Time to Complete Discovery *to add additional parties and amend pleadings* by Chris Brizindine, Kristie Hebenstreit, Kemmerer Village Inc.. (Attachments: # 1 Exhibit Ex. B – AGREED & JOINT MOTION TO EXTEND THE DEADLINE TO ADD ADDITIONAL PARTIES AND AMEND PLEADINGS)(Tank, |

| | | |
|---|---|---|
| | | Jordan) Modified on 7/8/2025 (JA). (Entered: 07/08/2025) |
| 07/08/2025 | | TEXT ORDER entered by Magistrate Judge Douglas J. Quivey on 7/8/25: Pursuant to CDIL–LR 11.4(A)(2), documents signed by an attorney must be filed using that attorney's log–in and password. They may not be filed using a log–in and password of another attorney. Therefore, the Clerk is directed to STRIKE documents 53 and 54 . The documents shall be refiled using a signatory's log–in and password.(JA) (Entered: 07/08/2025) |
| 07/08/2025 | 55 | Joint MOTION for Extension of Time to Complete Discovery *to Add Additional Parties and Amend Pleadings* by Defendants Chris Brizindine, Kristie Hebenstreit, Kemmerer Village Inc.. Responses due by 7/22/2025 (Attachments: # 1 Exhibit Ex. A, # 2 Exhibit Ex. B)(Cain, Edward) (Entered: 07/08/2025) |
| 07/09/2025 | | TEXT ORDER Entered by Magistrate Judge Douglas J Quivey on 7/9/2025. The parties' Agreed & Joint Motion to Extend the Deadline to Add Additional Parties and Amend Pleadings 55 is granted for the reasons stated in the motion. The following amended deadlines are set: fact discovery closed 8/8/2025 and additional parties joined by 8/8/2025. All other deadlines remain as previously set. A telephonic Status Conference set 12/17/2025 at 11:30 a.m. before Judge Doug Quivey. The parties are to call in to 551–285–1373 then enter meeting ID 160 363 06109. (AEJ) (Entered: 07/09/2025) |
| 07/14/2025 | 56 | Joint MOTION to Amend/Correct *THE JULY 9, 2025 ORDER EXTENDING DEADLINES* by Defendants Chris Brizindine, Kristie Hebenstreit, Kemmerer Village Inc.. Responses due by 7/28/2025 (Attachments: # 1 Exhibit Ex. A, # 2 Exhibit Ex. B)(Cain, Edward) (Entered: 07/14/2025) |
| 07/14/2025 | | TEXT ORDER Entered by Magistrate Judge Douglas J Quivey on 7/14/2025. Before the Court is the Parties' Joint Motion to Modify the July 9, 2025 Order. For the reasons stated in the Motion, Motion is GRANTED. The deadline to Amend the Pleadings and Add Additional Parties is August 8, 2025, and the deadline to complete fact discovery is November 5, 2025. All other dates remain the same.(AEJ) (Entered: 07/14/2025) |
| 07/23/2025 | 57 | Joint MOTION for Protective Order by Defendants Chris Brizindine, Kristie Hebenstreit, Kemmerer Village Inc.. Responses due by 8/6/2025 (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Cain, Edward) (Entered: 07/23/2025) |
| 07/24/2025 | | TEXT ORDER entered by Magistrate Judge Douglas J. Quivey on 7/24/25: Before the Court is a Joint Motion for Entry of Agreed Protective Order and Agreed Qualified Protective Order Pursuant to HIPPA 57 . The Motion is GRANTED for the reasons stated in the joint motion. The Clerk is directed to enter Protective Order [57–1] and Qualified Protective Order Pursuant to HIPPA [57–2].(JA) (Entered: 07/24/2025) |
| 07/24/2025 | 58 | PROTECTIVE ORDER Entered by Magistrate Judge Douglas J Quivey on 7/24/25. (JA) (Entered: 07/24/2025) |
| 07/24/2025 | 59 | HIPAA QUALIFIED PROTECTIVE ORDER Entered by Magistrate Judge Douglas J Quivey on 7/24/25. (JA) (Entered: 07/24/2025) |
| 08/04/2025 | 60 | MOTION to Compel by Defendants Chris Brizindine, Kristie Hebenstreit, Kemmerer Village Inc.. Responses due by 8/18/2025 (Attachments: # 1 Exhibit Exhibit A – Def's Requests to Produce to Co–Def's, # 2 Exhibit Exhibit B – Certificate of Service, # 3 Exhibit Exhibit C – Central District of Illinois Efile Notice 6/3/2025, # 4 Exhibit Exhibit D – Central District of Illinois Efile Notice 6/20/25, # 5 Exhibit Exhibit E – |

| | | |
|---|---|---|
| | | Email Correspondence 7/2/2025, # 6 Exhibit Exhibit F– Email Correspondence 7/14/25, # 7 Exhibit Exhibit G – Email Correspondence 7/24/25)(Cain, Edward) (Main Document 60 replaced on 8/4/2025) (KLC). (Entered: 08/04/2025) |
| 08/08/2025 | 61 | First CROSSCLAIM *for Contribution* against Ashley Bottoms, Nancy Collins, Christopher Gunn, William Hedger, Jessica Hendrick, Lindia Holmes, filed by Kemmerer Village Inc., Kristie Hebenstreit, Chris Brizindine. (Attachments: # 1 Exhibit Complaint at Law)(King, Madeleine) (Entered: 08/08/2025) |
| 08/15/2025 | 62 | MOTION to Compel by Plaintiff Richard Drew. Responses due by 8/29/2025 (Villeda, Sofia) (Entered: 08/15/2025) |
| 08/18/2025 | 63 | RESPONSE to Motion re 60 MOTION to Compel *Requests to Produce* filed by Cross Defendant Nancy Collins. (Slater, Bernard) (Entered: 08/18/2025) |
| 08/20/2025 | 64 | MOTION for Extension of Time to File Response/Reply as to 61 Crossclaim, by Defendants Nancy Collins, William Hedger, Jessica Hendrick, Lindia Holmes. Responses due by 9/3/2025 (Slater, Bernard) (Entered: 08/20/2025) |
| 08/25/2025 | | TEXT ORDER entered by Magistrate Judge Douglas J. Quivey on 8/25/25: Before the Court is DCFS Defendants' Joint Motion for Extension of Time to Respond to Co–Defendants Kristie Hebenstreit and Chris Brizindine's Crossclaim for Contribution 64 . For the reasons stated in the unopposed Motion, Motion is GRANTED. DCFS Defendants have up to and including 9/5/2025 to respond to Co–Defendants' Crossclaim for Contribution 61 . (JA) (Entered: 08/25/2025) |
| 08/29/2025 | 65 | NOTICE of Appearance of Attorney by Barbara Lynn Greenspan on behalf of Nancy Collins, William Hedger, Jessica Hendrick, Lindia Holmes (Greenspan, Barbara) (Entered: 08/29/2025) |
| 08/29/2025 | 66 | MOTION for Extension of Time to File Response/Reply as to 62 MOTION to Compel by Defendants Nancy Collins, William Hedger, Jessica Hendrick, Lindia Holmes. Responses due by 9/12/2025 (Greenspan, Barbara) (Entered: 08/29/2025) |
| 09/02/2025 | | TEXT ORDER entered by Magistrate Judge Douglas J. Quivey on 9/2/25: Before the Court is DCFS Defendants' Motion for Extension of Time to Respond to Plaintiff's Motion to Compel (Doc. 66 ). For the reasons stated in the unopposed Motion, Motion is GRANTED. DCFS Defendants have up to and including 9/19/2025 to respond to Plaintiff's Motion to Compel (Doc. 62 ). (JA) (Entered: 09/02/2025) |
| 09/04/2025 | 67 | Third Alias Summons Issued as to Christopher Gunn. (JA) Modified on 9/4/2025 to reflect that it is an Alias Summons. (JS). (Entered: 09/04/2025) |
| 09/04/2025 | 68 | NOTICE of Appearance of Attorney by Ginger Devaney on behalf of Nancy Collins, William Hedger, Jessica Hendrick, Lindia Holmes (Devaney, Ginger) (Entered: 09/04/2025) |
| 09/05/2025 | 69 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Motion to Dismiss Crossclaim [Dkt. 61]* by Defendants Nancy Collins, William Hedger, Jessica Hendrick, Lindia Holmes. Responses due by 9/19/2025 (Devaney, Ginger) (Entered: 09/05/2025) |
| 09/05/2025 | 70 | MEMORANDUM in Support re 69 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Motion to Dismiss Crossclaim [Dkt. 61]* filed by Defendants Nancy Collins, William Hedger, Jessica Hendrick, Lindia Holmes. (Attachments: # 1 Exhibit A– Crossclaim)(Devaney, Ginger) (Entered: 09/05/2025) |

| | | |
|---|---|---|
| 09/19/2025 | 71 | STATUS REPORT *Joint Status Report Regarding Plaintiffs Motion to Compel and Request to Enter And Continue Motion to Compel* by Nancy Collins, William Hedger, Jessica Hendrick, Lindia Holmes. (Devaney, Ginger) (Entered: 09/19/2025) |
| 09/19/2025 | 72 | AFFIDAVIT of Service for Complaint and Alias Summons served on Christopher Gunn on 9/8/2025, filed by Richard Drew. (Villeda, Sofia) (Entered: 09/19/2025) |
| 09/19/2025 | | TEXT ORDER entered by Magistrate Judge Douglas J. Quivey on 9/19/25: Before the Court is the Plaintiff and DCFS Defendants' Joint Status Report Regarding Plaintiff's Motion to Compel (Doc. 71 ). For the reasons stated in the Report, the Court continues the time for the DCFS Defendants to respond to Plaintiff's Motion to Compel, (Doc. 62 ), to October 31, 2025. Hopefully, by October 31, 2025, the dispute will be moot. Not addressed in the Report is the status of the Kemmerer Village Defendants' Motion to Compel (Doc. 60 ). In a response to that motion, DCFS Defendants responded in part: "Defense Counsel has drafted Responses to Co–Defendants' Request for Production and anticipates producing the Responses and production once it has been reviewed and bates–stamped, making the motion moot." (Doc. 63 , p. 2). The Court, however, does not know if that dispute in now moot. Thus, the DCFS Defendants and the Kemmerer Village Defendants are directed to file a Status Report no later September 26, 2025, addressing the status of the pending motion to compel. (Doc. 60 ).(JA) (Entered: 09/19/2025) |
| 09/19/2025 | 73 | RESPONSE to Motion re 69 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Motion to Dismiss Crossclaim [Dkt. 61]* filed by Cross Claimants Chris Brizindine, Kristie Hebenstreit, Kemmerer Village Inc.. (Tank, Jordan) (Entered: 09/19/2025) |
| 09/23/2025 | 74 | Joint MOTION for Extension of Time to Complete Discovery by Defendants Chris Brizindine, Kristie Hebenstreit, Kemmerer Village Inc.. Responses due by 10/7/2025 (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Cain, Edward) (Entered: 09/23/2025) |
| 09/24/2025 | | TEXT ORDER entered by Magistrate Judge Douglas J. Quivey on 9/24/25: Before the Court is the Parties' Joint Motion to Extend All Discovery Deadlines. (Doc. 74 ). For the reasons stated in the Motion, the Motions is GRANTED. The deadline to complete fact discovery is March 5, 2026; Plaintiff's deadline to disclose experts: May 5, 2026; deadline to depose Plaintiff's experts: June 9, 2026; Defendant's deadline to disclose experts: July 23, 2026; deadline to depose Defendant's experts: September 4, 2026; deadline to complete all discovery: September 4, 2026; and deadline to file dispositive motions: October 1, 2026. A telephonic status conference is set in front of Judge Quivey on April 8, 2026, at 10:00 a.m. The parties are to call in to 551–285–1373 then enter meeting ID 160 363 06109. (JA) (Entered: 09/24/2025) |
| 09/24/2025 | 75 | NOTICE of Appearance of Attorney by Rick Verticchio on behalf of Christopher Gunn (Verticchio, Rick) (Entered: 09/24/2025) |
| 09/24/2025 | 76 | First MOTION to Dismiss by Cross Defendant Christopher Gunn. Responses due by 10/8/2025 (Verticchio, Rick) (Entered: 09/24/2025) |
| 09/24/2025 | 77 | MEMORANDUM in Support re 76 First MOTION to Dismiss filed by Cross Defendant Christopher Gunn. (Verticchio, Rick) (Entered: 09/24/2025) |
| 09/26/2025 | 78 | STATUS REPORT *on Kemmerer Village Defendants' Motion to Compel (JOINT)* by Chris Brizindine, Kristie Hebenstreit, Kemmerer Village Inc.. (Cain, Edward) (Entered: 09/26/2025) |

| | | |
|---|---|---|
| 09/26/2025 | | TEXT ORDER entered by Magistrate Judge Douglas J. Quivey on 9/26/25: Before the Court are the Kemmer Village and DCFS Defendants Joint Status Report. (Doc. 78 ). According to the report, "[t]he parties reaffirmed the goal of having all documents disclosed by October 31, 2025." (Doc. 78, p. 3). Accordingly, the Court DENIES the Kemmer Village Defendants Motion to Compel, (Doc. 60 ), with leave to re−file if the requested documents are not received by October 31, 2025. (JA) (Entered: 09/26/2025) |
| 09/30/2025 | 79 | ORDER entered by Judge Colleen R. Lawless on 9/30/25: The Motion to Dismiss of Defendants Nancy Collins, Lindia Holmes, Jessica Hendrick, and William Hedger [Doc. 40] is GRANTED as to Count I. The Motion to Dismiss of Defendants Kemmerer Village Inc., Kristie Hebenstreit, and Chris Brizendine [Doc. 15] is GRANTED as to Count II. Counts I and II are Dismissed with Prejudice. The Court relinquishes jurisdiction over Counts III−XXI. Those counts are Dismissed without Prejudice. The Crossclaim for Contribution [Doc. 61] filed by Defendants Kemmerer Village, Hebenstreit, and Brizendine against the remaining Defendants is also Dismissed without Prejudice. The Clerk is Directed to terminate as moot Plaintiff's Motion to Compel [Doc. 62], Defendants Collins, Hedger, Hendrick, and Holmes's Motion to Dismiss Crossclaim [Doc. 69], and Defendant Christopher Gunn's Motion to Dismiss Crossclaim [Doc. 76]. Upon entry of judgment, the Clerk will terminate this case. SEE FULL WRITTEN ORDER. (JA) (Entered: 09/30/2025) |
| 09/30/2025 | 80 | JUDGMENT ENTERED.(JA) (Entered: 09/30/2025) |
| 10/28/2025 | 81 | MOTION to Alter Judgment by Plaintiff Richard Drew. Responses due by 11/12/2025 (Rapier, Aaron) (Entered: 10/28/2025) |
| 11/12/2025 | 82 | RESPONSE to Motion re 81 MOTION to Alter Judgment filed by Defendant Kemmerer Village Inc.. (Tank, Jordan) (Entered: 11/12/2025) |
| 11/12/2025 | 83 | RESPONSE to Motion re 81 MOTION to Alter Judgment filed by Defendants Nancy Collins, William Hedger, Jessica Hendrick, Lindia Holmes. (Devaney, Ginger) (Entered: 11/12/2025) |
| 01/08/2026 | 84 | MOTION to Withdraw as Attorney by Defendants Nancy Collins, William Hedger, Jessica Hendrick, Lindia Holmes. Responses due by 1/22/2026 (Devaney, Ginger) (Entered: 01/08/2026) |
| 01/09/2026 | | TEXT ORDER entered by Magistrate Judge Douglas J. Quivey on 1/9/26: Before the Court is Defendants Collins, Homes, Hendrick and Hedger's ("DCFS Defendants") Motion to Withdraw. (Doc. 84 ). For the reasons stated, the Motion is GRANTED. The Clerk is directed to terminate Ginger Devaney as counsel for DCFS Defendants.(JA) (Entered: 01/09/2026) |
| 02/19/2026 | 85 | ORDER Entered by Judge Colleen R. Lawless on 2/19/26 denying 81 Motion to Alter Judgment. See written Order. (ED) (Entered: 02/19/2026) |
| 03/20/2026 | 86 | NOTICE OF APPEAL as to 85 Order on Motion to Alter Judgment, 79 Order on Motion to Dismiss,,,,, Order on Motion to Compel,,,,, Order on Motion to Dismiss for Failure to State a Claim,,,,,,,,,,,,, by Richard Drew. Filing fee $ 605, receipt number AILCDC−4950817. (Murphy, Julie) (Entered: 03/20/2026) |

E-FILED
Friday, 20 March, 2026  01:42:47 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| RICHARD DREW, as Independent Administrator of the Estate of H.D., a minor, deceased, | ) ) ) ) | |
| Plaintiff, | ) | No. 24-cv-3292 |
| | ) | |
| v. | ) | Judge Colleen R. Lawless |
| | ) | |
| NANCY COLLINS, et al., | ) | Magistrate Judge Douglas Quivey |
| | ) | |
| Defendants. | ) | |

**<u>NOTICE OF APPEAL</u>**

Plaintiff-Appellant Richard Drew, as the Independent Administrator of the Estate of H.D., a minor now deceased, by and through counsel, Hart McLaughlin Eldridge, LLC, and Rapier Law Firm, PLLC, hereby appeals to the United States Court of Appeals for the Seventh Circuit from: (1) Order entered September 30, 2025, granting dismissal in favor of Defendants Collins, Holmes, Hendrick, and Hedger as to the claims asserted against them in Counts I of Plaintiff's complaint, in favor of Defendant Kemmerer Village, Hebenstreit, and Brizendine as to claims asserted against them in Count II of Plaintiff's complaint, and dismissing without prejudice Plaintiff's state-law claims asserted against Defendants in Counts III – XXI of Plaintiff's Complaint; (2) Judgment entered September 30, 2025 in Count I against Defendants Collins, Holmes, Hendrick, and Hedger, dismissing with prejudice Count II against Defendant Kemmerer Village, Hebenstreit, and Brizendine, and relinquishing jurisdiction over Counts III-XXL; and (3) Order entered February 19, 2026, denying Plaintiff's motion to reconsider and alter judgment. [ECF ##79, 80, 85, respectively.]

Dated: March 20, 2026

By:    */s/ Julie A. Murphy*
_____
One of Plaintiff's Attorneys

Aaron Rapier, IL No. 6270472
**Rapier Law Firm, PLLC**
1770 Park Street, Suite 200
Naperville, IL 60563
(630) 853-9224
arapier@rapierlawfirm.com

Julie A. Murphy, IL No. 6290303
Sofia Villeda, IL No. 6350043
**Hart McLaughlin & Eldridge, LLC**
One South Dearborn, Suite 1400
Chicago, Illinois 60603
(312) 955-0545
jmurphy@hmelegal.com
svilleda@hmelegal.com

2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 20, 2026, I submitted electronically for filing filed the foregoing Notice of Appeal with the Clerk of the Court for the United States District Court for the Central District of Illinois by using the CM/ECF system with service to be made through the CM/ECF system to those parties who have appeared.

*/s/ Julie A. Murphy*

Aaron Rapier, IL No. 6270472
**Rapier Law Firm, PLLC**
1770 Park Street, Suite 200
Naperville, IL 60563
(630) 853-9224
arapier@rapierlawfirm.com

Julie A. Murphy, IL No. 6290303
Sofia Villeda, IL No. 6350043
**Hart McLaughlin & Eldridge, LLC**
One South Dearborn, Suite 1400
Chicago, Illinois 60603
(312) 955-0545
jmurphy@hmelegal.com
svilleda@hmelegal.com

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

RICHARD DREW, as Independent                )
Administrator of the Estate of H.D., a minor, )
now deceased,                                )
    Plaintiff,                           )
                                         )
                                         )
v.                                           )        Case No. 24-cv-3292
                                         )
NANCY COLLINS, et al.,                       )
    Defendants.                          )

## ORDER

**COLLEEN R. LAWLESS, United States District Judge:**

Before the Court is Plaintiff's Motion to Reconsider and Alter Judgment. (Doc. 81).

For the reasons that follow, Plaintiff's motion is denied.

In an Opinion and Order entered on September 30, 2025, the Court dismissed

Plaintiff's federal claims with prejudice and state law claims without prejudice. (Doc. 79).

In dismissing Plaintiff's claims under 42 U.S.C. § 1983, the Court determined Plaintiff was

unable to state a plausible claim based on the state-created danger exception to *DeShaney*

*v. Winnebago Cnty. Dep't of Social Servs.*, 489 U.S. 189 (1989) and, even if he could,

Defendants are entitled to qualified immunity on the § 1983 claims. (Doc. 79).

In seeking reconsideration under Rule 59(e), Plaintiff contends he stated a

plausible § 1983 claim against Defendants because he alleged the DCFS Defendants

affirmatively placed H.D. in danger. (Doc. 81). Plaintiff further asserts the Court's

qualified immunity determination was based on a misapplication of the law. (*Id.*).

A party may move to alter or amend judgment within 28 days of the entry of judgment. Fed. R. Civ. P. 59(e). A movant is not entitled to relief under Rule 59(e) unless he "demonstrate[s] a manifest error of law or fact or present[s] newly discovered evidence." *Vesely v. Armslist LLC*, 762 F.3d 661, 666 (7th Cir. 2014). A motion to reconsider should not be used to "rehash" previously rejected arguments. *Id.*

Plaintiff takes issue with the Court's determination that the facts of this case are analogous to the facts in *DeShaney* and, if there was no liability in *DeShaney*, there can be no liability here. Plaintiff alleges that, although Defendants knew H.D. was safe while in the care and custody of his uncle, they placed him in danger by removing him from that custody and returning him to his father and stepmother.

In *DeShaney*, after a physician suspected child abuse, a juvenile court ordered placement of Joshua DeShaney in temporary custody of a hospital. *See DeShaney*, 48 U.S. at 192. Three days later, the child protection team determined there was insufficient evidence of child abuse for the court to retain custody of Joshua and returned him to his father's custody. *Id.*

In *DeShaney* and in this case, a child was removed from the custody of a biological parent. Both H.D. and Joshua DeShaney were eventually returned to the custody of their fathers (and, in H.D.'s case, his father's wife). While H.D. was in his uncle's custody for much longer than the three days Joshua was a ward of the court, the Court does not find that to be a significant distinction. Neither child was in the State's custody at the time of the unspeakable harm inflicted upon the children. Moreover, there were warning signs of child abuse in both cases prior to the return of the children to their parents. Under

these circumstances, the Supreme Court in *DeShaney* expressly held that the State had no constitutional duty to protect a child against a parent's violence and explained "[t]hat the State once took temporary custody of Joshua does not alter the analysis, for when it returned him to his father's custody, it placed him in no worse position than that in which he would have been had it not acted at all; the State does not become the permanent guarantor of an individual's safety by having once offered safety." *Id.* at 201.

The Court cautioned judges and lawyers against yielding to the impulse of natural sympathy in cases such as these because if the State "moved too soon to take custody of the son away from his father, they would likely have been met with charges of improperly intruding into the parent-child relationship." *Id.* at 203. In closing, the Supreme Court explained that the citizens of a particular state may create a system "of liability which would place upon the State and its officials the responsibility for failure to act in situations such as the present one" through "changing the tort law of the State in accordance with the regular lawmaking process. But they should not have it thrust upon them by this Court's expansion of the Due Process Clause of the Fourteenth Amendment" *Id.*

Plaintiff's reliance on *Murphy v. Morgan*, 914 F.2d 846 (7th Cir. 1990), is misplaced as the Seventh Circuit considered in that case the limited "right of a child in state custody not to be handed over by a state officer to a foster parent or other custodian, private or public, whom the state knows or suspects to be a child abuser." That issue is not present in this case. Notably, the Court recognized in *Murphy* that "there is indeed a difference between placing a child with a member of her family and placing the child with a foster

Page 3 of 6

parent," because "state employees who withhold a child from her family run the risk of being sued by the family for infringing their liberty of familial association, and we do not want to place child welfare workers on a razor's edge – damned if they return the child to its family and damned if they retain custody of the child or place him in a foster home or institution." *Id.* at 852-853. The Court specifically distinguished the foster parent situation from that in *DeShaney* by holding "[c]ertainly if the state decides to return a child whom it has taken custody of to the child's natural parents, those parents do not become state agents. That would undo *DeShaney*." *Id.* at 852.

The Seventh Circuit also stated:

> This is not a "positive liberties" case, like *DeShaney*, where the question was whether the Constitution entitles a child to governmental protection against physical abuse by his parents or by other private persons not acting under the direction of the state. The Supreme Court agreed with this court that there is no such entitlement. Here, in contrast, the state removed a child from the custody of her parents; and having done so, it could no more place her in a position of danger, deliberately and without justification, without thereby violating her rights either under the cruel and unusual punishments clause of the Eighth Amendment . . . if he was a convicted prisoner or the due process clause if he was awaiting trial.

*Id.* at 848-49 (internal citations omitted). The court distinguished cases in which the state is a "doer of harm," which would subject it to liability, with those when it was merely an "inept rescuer," which does not subject it to liability. *Id.* at 849.

The facts in *Murphy* are distinguishable from those present here and *DeShaney* is the most analogous case to this one. In *Murphy*, the minor child was in the state's custody at the time of the harm while H.D. and Joshua DeShaney were returned to their father's homes after temporary custody was removed. The state took no further action in either

Page 4 of 6

case despite continued signs of abuse and tragedy soon occurred in both cases. Thus, the Court adheres to its prior finding that, "[i]f there was no liability in *DeShaney*, there can be no liability here." (Doc. 79).

The Court denies Plaintiff's request to reconsider its qualified immunity determination. In considering whether qualified immunity applies, courts must consider whether plaintiff has alleged facts establishing the violation of a constitutional right and whether the "right was clearly established at the time of the defendant's alleged misconduct." *Dockery v. Blackburn*, 911 F.3d 458, 466 (7th Cir. 2018). A plaintiff can accomplish this by identifying a closely analogous case that is controlling and finds the alleged violation unlawful. *Stockton v. Milwaukee*, 44 F.4th 605, 620 (7th Cir. 2022). The Supreme Court has cautioned courts not to define the particular constitutional right at a "high level of generality." *Dockery*, 911 F.3d at 466 (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)).

As this Court previously observed, *DeShaney* is the most analogous binding precedent, and it would suggest to Defendants they were not violating a clearly established constitutional right. (Doc. 79). Except for *Murphy*, the Seventh Circuit cases that have recognized a claim for state-created dangers generally have not involved issues relating to the placement of abused children. *See, e.g. Reed v. Gardner*, 986 F.2d 1122, 1127 (7th Cir. 1993) (allegations involving a police officer's arrest of sober driver while leaving behind a drunk passenger who later took the wheel and was involved in a collision); *Monfils v. Taylor*, 165 F.3d 511, 518 (7th Cir. 1998) (allegations involving the release of an anonymous informant's tape recording discussing employee theft after which the

informant was murdered by coworkers); *Paine v. Cason*, 678 F.3d 500, 509-11 (7th Cir. 2012) (officers were potentially liable on a failure to treat claim after arresting a woman in a safe place and releasing her in a hazardous one where she was unable to protect herself from being raped at knifepoint, and she jumped out of a seventh story window); *Rakes v. Roederer*, 117 F.4th 968, 969-79, 991-92 (7th Cir. 2024) (denying qualified immunity to a police officer who falsely told a woman her husband would be detained for 24 hours under a mental health hold, the husband was released after less than three hours, and he returned to their home and shot and killed her). None of the aforementioned cases would put Defendants on notice that their conduct violated a clearly established constitutional right. Therefore, even if Plaintiff were able to allege a plausible § 1983 claim, Defendants are entitled to qualified immunity from that claim.

Therefore, Plaintiff's Motion to Reconsider and Alter Judgment (Doc. 81) is DENIED.

ENTER: February 19, 2026

COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| RICHARD DREW, as Independent Administrator of the Estate of H.D., a minor, now deceased,<br>        Plaintiff,<br><br>    v.<br><br>NANCY COLLINS, et al.,<br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 24-cv-3292 |

## OPINION

**COLLEEN R. LAWLESS, United States District Judge:**

Before the Court is the Motion of Defendants Nancy Collins, Lindia Holmes, Jessica Hendrick, and William Hedger to Dismiss Plaintiff's Complaint. (Doc. 40). Defendants Kemmerer Village, Inc., Kristie Hebenstreit, and Chris Brizendine also filed a Motion to Dismiss or for a more Definite Statement. (Doc. 15).

## I.    PARTIES AND CLAIMS

H.D. was born in 2019 and tragically died on October 21, 2022, at the age of 3 years old. Plaintiff Richard Drew is the Independent Administrator of the Estate of H.D. (Doc. 1 at ¶ 2). At all relevant times, Defendant Nancy D. Collins was a Child Welfare Specialist employed by the Illinois Department of Children and Family Services ("DCFS") and held a Child Welfare Employee License ("CWEL") issued by the State of Illinois. (*Id.* at ¶ 3). Defendant Lindia A. Holmes was a Public Service Administrator employed by DCFS and duly licensed by the State of Illinois with a CWEL. (*Id.* at ¶ 4). Defendant William Hedger was a Child Protection Specialist employed by DCFS and duly licensed by the State with

Page 1 of 19

a CWEL. (*Id.* at ¶ 5). Defendant Jessica Hendrick was a Child Protection Advanced Specialist employed by DCFS and duly licensed by the State with a CWEL. (*Id.* at ¶ 6). The Court will refer collectively to the aforementioned Defendants as "DCFS Defendants."

Defendant Kemmerer Village is an Illinois corporation with its principal office in Taylorville, Illinois, and does business as Kemmerer Village Community Services, where it provides foster care and other services in Christian County, Illinois. (*Id.* at ¶ 8). Defendant Kristie Hebenstreit was a caseworker and Defendant Chris Brizendine was a caseworker supervisor employed by Kemmerer Village at all relevant times. (*Id.* at ¶¶ 9-10). The Court will collectively refer to these defendants as the Kemmerer Village Defendants. Kemmerer Village Defendants acted under color of law pursuant to a contract with DCFS or otherwise were allowed by DCFS to conduct and participate in investigations of child abuse or neglect. (*Id.* at ¶¶ 19, 203).

Defendant Christopher Gunn was the biological father of H.D. and Defendant Ashley Bottoms a/k/a Ashley Gunn was the wife of Christopher Gunn and lived in the same residence as Christopher Gunn and H.D. Ashley was the daytime caretaker to H.D. (*Id.* at ¶¶ 11-12).

Plaintiff alleges each Defendant knew or suspected that H.D. was at risk of physical abuse and serious neglect while in the custody of his father and stepmother. (*Id.* at ¶ 17). DCFS Defendants knew or suspected Ashley Bottoms had six prior reports of abuse or neglect, including physical abuse of children. Specifically, prior to October 20,

2022, the DCFS Defendants and Kemmerer Village Defendants knew Bottoms had physically abused H.D. prior to killing him. (*Id.* at ¶ 18).

Count I of Plaintiff's Complaint alleges Fourteenth Amendment violations against the DCFS Defendants under 42 U.S.C. § 1983. Count II asserts Fourteenth Amendment violations against the Kemmerer Village Defendants under § 1983. Counts III through XXI consist of state law claims asserted against the various Defendants.

## II.    FACTUAL ALLEGATIONS

On or about April 6, 2022, H.D.'s mother and father were both found to be unfit and unable to care for, protect, train, educate, supervise, or discipline the minor so that the placement of the minor with either biological parent was determined to be contrary to the health, safety, and best interests of the child. (*Id.* at ¶ 26). On or about April 6, 2022, DCFS took protective custody and made H.D. a ward of the court. (*Id.* at ¶ 27). H.D. was placed in the care and custody of his maternal uncle, Kiel Quigley, under whose care H.D. thrived. (*Id.* at ¶ 28).

On or about April 25, 2022, Kemmerer Village Defendants recommended H.D. be removed from the care and custody of Kiel Quigley and be placed with Defendants Gunn and Bottoms. (*Id.* at ¶ 29). Thereafter, on or about August 20, 2022, DCFS removed H.D. from placement with Quigley and placed H.D. in the temporary custody and care of Gunn and Bottoms. (*Id.* at ¶ 30). Plaintiff alleges that prior to August 20, 2022, Defendant Bottoms had a history of child abuse that was known or should have been known to DCFS Defendants and Kemmerer Village Defendants. Plaintiff cites six different reports of abuse involving Bottoms between June of 2018 and December of 2019. (*Id.* at ¶ 31).

Furthermore, Bottoms had other prior involvement with DCFS when one of her children was born with methamphetamine in her system. (*Id.* at ¶ 32). Plaintiff alleges it was known to and/or suspected by the DCFS Defendants and Kemmerer Village Defendants, through prior reports, observation, and investigation of reports of child abuse, that Bottoms posed a real and immediate threat to the safety and welfare of the minor. (*Id.* at ¶ 33).

At all relevant times, Christopher Gunn had a history of dangerous drug use and reported child abuse that was known to and/or suspected by all Defendants to pose a real and immediate threat to the safety and welfare of the minor. (*Id.* at ¶ 34). Plaintiff alleges that, following the placement with Defendants Gunn and Bottoms on or about August 20, 2022, and prior to H.D.'s death, multiple reports were made concerning the safety and suspected abuse of H.D. while in the custody of Gunn and Bottoms but he remained in their custody. (*Id.* at ¶¶ 35-36).

Defendants Hebenstreit and Brizendine were assigned to investigate and make recommendations as to the safety, custody, and care of H.D. (*Id.* at ¶ 37). Plaintiff alleges Hebenstreit conducted a sham investigation, omitted information from her report, inserted false information in her report of her investigation, and otherwise created an inaccurate report. (*Id.* at ¶ 38). In supervising and reviewing Hebenstreit's work, Brizendine and Hebenstreit conferred and conspired in their sham investigation and/or creation of a false and inaccurate report. (*Id.* at ¶¶ 39-40). Both Defendants knew or suspected Bottoms posed a threat to the safety and security of H.D., based in part on prior reports concerning her actions and the safety of children. (*Id.* at ¶ 41). On September 20,

2022, Hebenstreit prepared a permanency hearing report, which was reviewed and approved by Brizendine. According to Plaintiff, the report purposefully omitted information regarding Bottoms, the knowledge or suspicion of the danger she posed to H.D., and inserted false information in his report of the investigation. (*Id.* at ¶ 42).

Defendants Collins and Holmes were assigned to oversee the DCFS case involving the safety, custody, and care of H.D. (*Id.* at ¶ 43). They knew Bottoms was the live-in paramour of Gunn and knew or suspected Bottoms posed a threat to the safety and security of H.D., based in part on the many prior reports concerning her and the safety of children. (*Id.* at ¶ 44). Plaintiff alleges Collins conducted a sham investigation, omitted information from her report, or inserted false information in her report of her investigation, or otherwise created an inaccurate report. (*Id.* at ¶ 45). In supervising and reviewing Collins's work in conformance with DCFS procedures, Holmes and Collins conferred and conspired in their sham investigation and creation of a false and inaccurate report. (*Id.* at ¶¶ 46-47). Despite their knowledge or suspicion of the harm posed to H.D.'s safety if removed from his uncle's custody and placed with Gunn and Bottoms, Collins and Holmes consciously ignored and failed to stop the removal of H.D. from the safety of his uncle's custody and the placement of H.D. with Gunn and Bottoms. (*Id.* at 48).

On or about October 14, 2022, DCFS was contacted regarding an allegation of abuse of H.D. by Bottoms. The child was observed with new injuries that were not present the day before, to include: a "goose egg" on his forehead, a bruise over his eye, a bruise near his sternum, a bruise on his shin, a scratch near his ear, a bruise near his jaw, and scratches to his lower back. When asked if Bottoms had hit him, H.D. nodded his head

while crying and said he did not want to go home. (*Id.* at ¶ 49). The same day, Defendant Hedger was assigned to investigate the allegation of abuse to ensure Gunn and Bottoms were the appropriate custodial parents of H.D. (*Id.* at ¶ 50). Plaintiff alleges Hedger conducted a sham investigation, wherein he purposefully omitted information from his report or inserted false information. (*Id.* at ¶ 51). Even though Hedger knew or suspected H.D. was at risk for abuse while in the custody of Gunn and Bottoms, he consciously ignored and failed to stop the placement of H.D. with them. (*Id.* at ¶ 52). In supervising and reviewing Hedger's work in conformance with DCFS procedures, Hendrick and Hedger conferred and conspired in their sham investigation and creation of a false and inaccurate report. (*Id.* at ¶ 53-54).

On or about October 14, 2022, Hebenstreit spoke with Hedger and Hendrick regarding H.D.'s court-ordered placement and noted previous instances where H.D. presented with bruising. (*Id.* at ¶ 55). Even though Hebenstreit knew or suspected H.D. was at risk for abuse while in the custody of Gunn and Bottoms, he consciously ignored and failed to stop the placement of H.D. with Gunn and Bottoms. (*Id.* at ¶ 56). Even though Hendrick knew or suspected that Hedger had conducted a sham investigation and created a false and inaccurate report and that H.D. was at a risk for abuse if placed in the custody of Gunn and Bottoms, Hendrick nevertheless approved, authorized, and directed the placement of H.D. in the custody of Gunn. (*Id.* at ¶ 57).

On October 14, 2022, in response to the allegation of abuse of H.D. by Bottoms, Hedger directed H.D.'s father to take him to the hospital for an evaluation by an emergency room doctor on the causes of H.D.'s injuries, which included a bloody fat lip,

bruising on his forehead, left eye, left shin, and a scratch near his left ear. (*Id.* at ¶ 58). Hedger was told the doctor who examined H.D. on that date was unable to determine the cause of H.D.'s injuries and could not rule out abuse. (*Id.* at ¶ 59). Nonetheless, Hedger returned H.D. to the custody of Gunn and Bottoms. (*Id.* at ¶ 60).

On October 20, 2022, H.D. was brought to OSF Saint Francis Medical Center. Upon his arrival, H.D. was noted to be in full cardiac arrest. First responders intubated H.D. and administered CPR for approximately 25 minutes. Hospital staff attempted to resuscitate H.D. for approximately 41 minutes. (*Id.* at ¶ 61). H.D. was pronounced dead at 5:40 p.m. on October 20, 2022. (*Id.* at ¶ 62). An autopsy of H.D.'s body found blunt force injuries of the head and upper body, multiple hemorrhages, a cerebral contusion, and contusions of the neck, chest, back, and extremities. (*Id.* at ¶ 63). The autopsy concluded that H.D.'s cause of death was the result of blunt force injuries of the head. (*Id.* at ¶ 64).

On April 13, 2023, Ashley Bottoms pled guilty to involuntary manslaughter of H.D. Bottoms was sentenced to 11 years in prison in July of 2023. (*Id.* at ¶ 65). Plaintiff contends that, as a direct and proximate result of the acts or omissions of DCFS Defendants and Kemmerer Village Defendants, Ashley Bottoms killed H.D. on October 20, 2022, by violently pushing or throwing the minor from the couch, causing him to strike his head on a piece of furniture, which resulted in his death. (*Id.* at ¶ 68).

III.    **DISCUSSION**

DCFS Defendants' Motion to Dismiss seeks dismissal of the § 1983 claims against the individual Defendants under the Supreme Court's ruling in *DeShaney v. Winnebago Cnty. Dep't of Social Servs.*, 489 U.S. 189 (1989), wherein the Court concluded, generally,

that "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 197. Additionally, even if Plaintiff's claims are not barred by *DeShaney*, DCFS Defendants contend they are entitled to qualified immunity. In response, Plaintiff argues the state-created danger exception to *DeShaney* applies and Defendants are not entitled to qualified immunity.

### A. Legal Standard

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *See Christensen v. Cnty. of Boone, Ill.*, 483 F.3d 454, 458 (7th Cir. 2007). When considering a motion to dismiss under Rule 12(b)(6), the court construes the complaint in the light most favorable to the plaintiff, accepting all well-pleaded allegations as true and construing all reasonable inferences in plaintiff's favor. *Id.* To state a claim for relief, a plaintiff need only provide a short and plain statement of the claim showing she is entitled to relief and giving defendants fair notice of the claims. *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011). However, the complaint must set forth facts that plausibly demonstrate a claim for relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). A plausible claim is one that alleges factual content from which the court can reasonably infer that defendants are liable for the misconduct alleged. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Merely reciting the elements of a cause of action or supporting claims with conclusory statements is insufficient to state a claim. *See id.* The complaint must do more than assert a right to relief that is "speculative." *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

### B. *DeShaney v. Winnebago County Dep't of Social Services*

In *DeShaney*, the Supreme Court considered whether social workers and other local officials deprived the plaintiff of his liberty in violation of the Due Process Clause when they had reason to believe he was being abused by his father but did not act to remove him from his father's custody. *DeShaney*, 489 U.S. at 191. The plaintiff, who was a toddler when the authorities first learned he might be a victim of abuse, was beaten and permanently injured by his father. *Id.* Upon first learning of the accusations of abuse, social services officials interviewed the father, who denied the allegations, and the officials did not pursue the matter. *Id.* at 192. One year later, the child was admitted to the hospital with multiple bruises and abrasions. *Id.* After the examining physician notified social services of the suspected abuse, the juvenile court placed the plaintiff in the temporary custody of the hospital. *Id.* Three days later, an ad hoc "Child Protection Team" consisting of social workers and other officials considered the plaintiff's situation and determined there was insufficient evidence of child abuse to maintain custody of him. *Id.* The team recommended several measures to protect plaintiff, which included enrolling him in a preschool program and providing his father with counseling services. *Id.* Plaintiff's father entered into a voluntary agreement with social services wherein he promised to cooperate in achieving the goals. *Id.*

Based on the team's recommendation, the juvenile court dismissed the child protection case and returned plaintiff to his father's custody. *Id.* The following month, emergency room personnel informed the social worker handling plaintiff's case that plaintiff had once again been treated for suspicious injuries. *Id.* The caseworker

determined there was no basis to take action. *Id.* During the following six months, the caseworker made monthly visits to plaintiff's home, wherein she observed a number of suspicious injuries on plaintiff's head. *Id.* at 192-93. While the caseworker recorded these incidents in her files and noted her continuing suspicions that the child was being physically abused, she did nothing else. *Id.* at 193. Soon thereafter, the emergency room notified social services that plaintiff had once again been treated for injuries believed to be caused by child abuse. *Id.* On the caseworker's following two visits to the DeShaney home, she was told the child was too ill to see her. *Id.* The social services department took no action. *Id.*

A few months later, the plaintiff's father beat the 4-year-old so severely that he fell into a life-threatening coma. *Id.* Plaintiff underwent emergency brain surgery, which revealed a series of hemorrhages caused by traumatic head injuries that were inflicted over a lengthy period. *Id.* Plaintiff suffered brain damage so severe that he likely would never be able to live independently. *Id.* Plaintiff's father was convicted of child abuse. *Id.*

The minor child and his mother brought suit asserting the defendants "had deprived Joshua of his liberty without due process of law, in violation of his rights under the Fourteenth Amendment, by failing to intervene to protect him against a risk of violence at his father's hands of which they knew or should have known." *Id.* In considering the plaintiff's due process claim, the Supreme Court first observed that "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *Id.* at 195. The language of the Due Process Clause limits the State's power to act and does not guarantee

certain minimal levels of safety and security. *Id.* While the language prohibits the State from violating certain rights without "due process of law," it does not extend "to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means." *Id.*

The Court further noted that history does not support such an expansive reading of the Due Process Clause. *Id.* "Its purpose was to protect the people from the State, not to ensure that the State protected them from each other." *Id.* at 196. The "democratic political processes" determine the government's obligation when it comes to protecting people from each other. *Id.* "As a general matter, then, we conclude that a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 197.

The Court then considered the plaintiff's argument that, even if the Due Process Clause imposes no affirmative obligation on the State to protect the public, such a duty may arise out of certain "special relationships" created or assumed by the State as to particular individuals. *Id.* While the "Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals," such as "incarcerated prisoners" and "involuntarily committed mental patients," the Court concluded it imposed no such obligation on the State as to the plaintiff. *Id.* at 197-98. The Court observed:

> While the State may have been aware of the dangers that Joshua faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them. That the State once took temporary custody of Joshua does not alter the analysis, for when it returned him to his father's custody, it placed him in no worse position than

that in which he would have been had it not acted at all; the State does not become the permanent guarantor of an individual's safety by having once offered him shelter. Under these circumstances, the State had no constitutional duty to protect Joshua.

*Id.* at 201. The Due Process Clause "does not transform every tort committed by a state actor into a constitutional violation." *Id.* at 202. Even though the State's failure to protect plaintiff from his father's violence is "calamitous in hindsight," it had no constitutional duty to do so. *Id.*

The DCFS Defendants contend *DeShaney* compels the outcome in this case because the facts here are materially indistinguishable from those in *DeShaney*. They allege neither the "special relationship" exception nor the "state-created danger" exception applies. Plaintiff asserts the state-created danger exception applies and the motion to dismiss should be denied on that basis.

### C. State-Created Danger

The Seventh Circuit has explained that the exception under *DeShaney* for state-created dangers is a narrow one. *See First Midwest Bank Guardian of Estate of LaPorta v. City of Chicago*, 988 F.3d 978, 988 (7th Cir. 2021). It applies when the state creates or increases a danger to a person. *Doe v. Village of Arlington*, 782 F.3d 911, 917 (7th Cir. 2015). "When courts speak of the state's increasing the danger of private violence, they mean the state did something that turned a potential danger into an actual one, rather than just stood by and did nothing to prevent private violence." *Id.* (internal quotation marks and citation omitted). This exception, which applies when the state "affirmatively places a particular individual in a position of danger the individual would not otherwise have faced," is

understood to derive from the language in *DeShaney* that, "although the county and its social workers may have been aware of the dangers the child faced in his father's home, they played no part in the creation of those dangers." *First Midwest Bank*, 988 F.3d at 988. (internal quotation marks and citations omitted). This exception "arises only by implication from a brief observation in the Court's opinion." *Id.* at 988. The Justices "hinted that the Constitution *might* support liability when a state has a duty that 'arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf.'" *Weiland v. Loomis*, 938 F.3d 917, 921 (7th Cir. 2019) (quoting *DeShaney*, 489 U.S. at 200).

For the exception to apply, the plaintiff "must show that the state affirmatively placed him in a position of danger and that the state's failure to protect him from that danger was the proximate cause of his injury." *First Midwest Bank*, 988 F.3d at 988. To meet the proximate-cause requirement, "the state-created danger must entail a foreseeable type of risk to a foreseeable class of persons." *Id.* at 988-89. "A generalized risk of indefinite duration and degree is insufficient." *Id.* at 989. Given that the right to protection against state-created danger is derived from the substantive component of the Due Process Clause, "the state's failure to protect the plaintiff must shock the conscience." *Id.* Only "the most egregious official conduct" will meet this threshold. *Id.*

The Seventh Circuit has also noted "the state-created danger exception" does not tell a public employee what to do, or avoid, in particular situations. *See Weiland*, 938 F.3d at 919. It is a principle of liability and not a doctrine concerning primary conduct. *Id.* The

court in *Weiland* described the facts in *DeShaney* and observed: "No one could have doubted that the child-welfare officials' decision increased Joshua's danger, compared with his safety in the hospital—indeed, that increase was the foundation of his claim for damages—but the Supreme Court nonetheless held that the Due Process Clause of the Fourteenth Amendment does not require a state to protect its residents from private violence." *Id.* Courts cannot create an "exception" to *DeShaney* that contradicts this principle and, therefore, the "state-created danger exception" cannot be treated "as a rule of primary conduct forbidding any acts of public officials that increase private dangers." *Id.* Courts should be cognizant of not reaching a result that would have justified liability in *DeShaney*. *Id.* at 921.

Furthermore, the Cout finds Plaintiff's conclusory allegations regarding a sham investigation, falsified reports, and omission of information from their reports do not constitute well-pleaded facts; without more, they are unactionable legal conclusions. *Wright v. Shumate*, 2024 WL 689990, at *4 (N.D. Ill. Feb. 20, 2024); *Gatz v. Fabian*, 2025 WL 327934, at *13 (N.D. Ill. Jan. 29, 2025) ("Indeed, claims of falsified reports and omitted facts, without allegations of what Defendants falsified or omitted from the reports, are conclusory.") (internal quotation marks and citation omitted).

*DeShaney* and this case both involve unspeakable tragedies which likely could have been avoided if certain individuals had acted when warning signs emerged. However, there were arguably more warning signs in *DeShaney* than there were here as to H.D. *DeShaney* included the following signs of abuse: (1) before the juvenile court returned the plaintiff to his father's custody, a physician notified social services of

suspected abuse; (2) emergency room personnel informed the social worker that plaintiff had been treated for suspicious injuries; (3) the caseworker observed a number of suspicious injuries on plaintiff's head during home visits; (4) emergency room workers again notified social services that plaintiff had been treated for injuries believed to have been caused by child abuse; and (5) on two home visits, the caseworker was told plaintiff was too ill to see her. *See DeShaney*, 489 U.S. at 192-93. Despite all these warning signs, the social services department took no action. *Id.* at 193.

Plaintiff attempts to distinguish this case from *DeShaney* by noting H.D. was placed in the care and custody of his uncle, Kiel Quigley, before being removed to the custody of Gunn and Bottoms. Plaintiff does not say how that is different from the plaintiff in *DeShaney* being removed from the temporary custody of the hospital. Both Joshua DeShaney and H.D. were removed from the custody of non-abusive guardians and placed in the custody of abusive guardians. In both cases, there were signs that abuse was occurring. However, *DeShaney* tells us "the State does not become the permanent guarantor of an individual's safety by having once offered him shelter." *DeShaney*, 489 U.S. at 201.

As for H.D., Plaintiff claims there were numerous warning signs that Gunn and Bottoms were unfit parents prior to H.D.'s placement with them, including five different reports of abuse involving Bottoms in the four years prior to H.D.'s placement. However, the Complaint indicates the five prior reports of alleged child abuse by Bottoms were deemed to be unfounded. Plaintiff cites the October 14, 2022 allegation of abuse that was referred to DCFS after H.D. was observed with scratching and bruising on his forehead,

sternum, shin, ear, jaw, and lower back. H.D. also informed DCFS workers that Bottoms had hit him. Plaintiff alleges the DCFS Defendants were aware of previous instances when H.D. presented with bruising. In response to the October 14 incident, Defendant Hedger directed H.D.'s father to take H.D. to the hospital in order for an emergency room doctor to determine the causes of H.D.'s injuries. The doctor was unable to determine the cause of H.D.'s injuries but could not rule out abuse. Six days later, H.D died after sustaining blunt force injuries to the head.

In *DeShaney*, there was no liability even after a physician informed social workers of suspected abuse and after emergency room personnel notified social workers on multiple occasions of suspected injuries due to child abuse. The caseworker also observed suspicious injuries on the plaintiff on one occasion and was unable to see him on two occasions because he was "too ill." Here, H.D. was observed with multiple injuries less than a week before he died but, even then, the doctor could not definitively determine the cause of his injuries.

As previously noted, the facts suggesting abuse that were known to caseworkers in *DeShaney* were arguably more egregious than those known to caseworkers in this case. At the very least, it is difficult to distinguish which case had more indicators of child abuse. If there was no liability in *DeShaney*, there can be no liability here. *See, e.g., Weiland*, 938 F.3d at 921 ("Every once in a while, a court should step back and ask whether local jurisprudence matches the instructions from higher authority. If taken literally, the approach that *Johnson* [*v. Rimmer*, 926 F.3d 695 (7th Cir. 2019)] attributes to *King* [*v. East St. Louis School Dist.*, 496 F.3d 812 (7th Cir. 2007)] would have justified liability in

Page 16 of 19

*DeShaney*."). At most, it could be said that defendants in *DeShaney* and Defendants here did nothing upon observing signs of child abuse. However, that is not enough to trigger the "narrow" *DeShaney* state-created dangers exception. "A plaintiff must show that the state affirmatively placed him in a position of danger." *First Midwest Bank*, 988 F.3d at 988. Both H.D. and Joshua DeShaney were already in positions of danger. Based on the reasoning of *DeShaney*, the Court dismisses the § 1983 claims against the DCFS Defendants.

### D. Qualified Immunity

Having determined that the § 1983 claims are subject to dismissal under *DeShaney*, the Court is not required to address DCFS Defendants' request for the claims to be dismissed on qualified immunity grounds. The Court will simply note that it appears qualified immunity would apply in this case. Plaintiff does not cite a single analogous case which suggests the DCFS Defendants violated a clearly established constitutional right. In fact, the most analogous case to the present case is *DeShaney*, which would suggest to Defendants they were not violating a clearly established constitutional right. Therefore, even if Plaintiff's § 1983 claims were not already subject to dismissal, the claims would be barred by qualified immunity.[1]

---

[1] Plaintiff claims it is premature to address qualified immunity at the pleading stage. However, determining whether defendants are entitled to qualified immunity at this stage is consistent with the Supreme Court's directive to resolve immunity issues at the earliest possible time "because qualified immunity protects government officials from both litigation and liability." *Sabo v. Erickson*, 128 F.4th 836, 842-43 (7th Cir. 2025)

Page 17 of 19

### E. Motion to Dismiss of Kemmerer Village Defendants

Defendants Kemmerer Village, Inc., Kristie Hebenstreit, and Chris Brizendine have filed a Motion to Dismiss or for a more Definite Statement. The Kemmerer Village individual Defendants seek dismissal of the § 1983 claims in Count II because Plaintiff failed to allege Defendants proximately caused a deprivation of H.D.'s constitutional rights. In seeking dismissal, the Kemmerer Village Defendants rely on *DeShaney* to argue the alleged conduct of the Kemmerer Village Defendants did not create or increase a danger to H.D. such that it had an affirmative duty to protect him. For the reasons noted in addressing the DCFS Defendants' Motion, the Court dismisses the § 1983 claims as to the Kemmerer Village Defendants. Those claims would also be subject to dismissal on qualified immunity grounds for the reasons previously noted.

## IV.   CONCLUSION

For all of these reasons, the Court concludes Plaintiff is unable to state a plausible claim based on the state-created danger exception to *DeShaney* and, even if he could, Defendants would be entitled to qualified immunity on the § 1983 claims. Because the Court finds that amendment of the complaint as to the § 1983 claims would be futile, those claims will be dismissed with prejudice. The dismissal of the federal claims does not mean that Plaintiff does not have viable state tort law claims. The normal practice within the Seventh Circuit is that, if all federal claims are dismissed before trial, the district court should relinquish jurisdiction over any supplemental state law claims "in order to minimize federal judicial intrusion into matters of purely state law." *Burritt v.*

*Ditlefsen*, 807 F.3d 239, 252 (7th Cir. 2015); *see also* 28 U.S.C. Sec 1367(c)(3). The Court finds no basis to depart from that general practice.

Therefore, the Motion to Dismiss of Defendants Nancy Collins, Lindia Holmes, Jessica Hendrick, and William Hedger [Doc. 40] is GRANTED as to Count I. The Motion to Dismiss of Defendants Kemmerer Village Inc., Kristie Hebenstreit, and Chris Brizendine [Doc. 15] is GRANTED as to Count II. Counts I and II are Dismissed with Prejudice. The Court relinquishes jurisdiction over Counts III-XXI. Those counts are Dismissed without Prejudice. The Crossclaim for Contribution [Doc. 61] filed by Defendants Kemmerer Village, Hebenstreit, and Brizendine against the remaining Defendants is also Dismissed without Prejudice. The Clerk is Directed to terminate as moot Plaintiff's Motion to Compel [Doc. 62], Defendants Collins, Hedger, Hendrick, and Holmes's Motion to Dismiss Crossclaim [Doc. 69], and Defendant Christopher Gunn's Motion to Dismiss Crossclaim [Doc. 76]. Upon entry of judgment, the Clerk will terminate this case.

ENTER:  September 30, 2025

_____
COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE

Judgment in a Civil Case (02/11)

# UNITED STATES DISTRICT COURT
for the
### Central District of Illinois
Peoria Division

| | | |
|---|---|---|
| RICHARD DREW, as Independent Administrator of the Estate of H.D., a minor, now deceased,<br><br>Plaintiff,<br><br>vs.<br><br>NANCY COLLINS, LINDIA HOLMES, WILLIAM HEDGER, JESSICA HENDRICK, KEMMERER VILLAGE, INC., KRISTIE HEBENSTREIT, CHRIS BRIZINDINE, CHRISTOPHER GUNN, AND ASHLEY BOTTOMS,<br><br>Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case Number: 24-cv-3292 |

## JUDGMENT IN A CIVIL CASE

☐ **JURY VERDICT**.   This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

☒ **DECISION BY THE COURT**.   This action came before the Court, and a decision has been rendered.

**IT IS ORDERED AND ADJUDGED** that the Plaintiff Richard Drew's actions in Count I against Defendants Nancy Collins, Lindia Holmes, Jessica Hendrick, William Hedger, and in Count II against Defendants Kemmerer Village, Inc., Kristie Hebenstreit, Chris Brizendine, are dismissed with prejudice. The Court relinquishes jurisdiction over Counts III-XXL, and those counts are Dismissed without Prejudice. The Crossclaim for Contribution filed by Defendants Kemmerer Village, Kristie Hebenstreit, and Chris Brizendine against the remaining Defendants is Dismissed without Prejudice.

**Dated: 9/30/2025**



s/ Shig Yasunaga
Shig Yasunaga
Clerk, U.S. District Court